STATE OF CONNECTICUT *v.* KEVIN J. HACKETT
(AC 22174)

Lavery, C. J., and Dranginis and Daly, Js.[1]

---

[1] This appeal was argued before a panel comprised of Chief Judge Lavery and Judges Dranginis and Daly. Although Judge Daly agreed with the other judges regarding the resolution of this appeal, he died before he had the opportunity to concur with the written decision. The parties stipulated, however, that rather than rearguing the appeal to this court with a panel consisting of the original two judges and an additional judge, they would permit the remaining two judges alone to render a written decision.

Argued April 25—officially released September 3, 2002

*Louis S. Avitabile*, special public defender, for the appellant (defendant).

*Julia K. Mahoney*, deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Amy Sedensky*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Kevin J. Hackett, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while his operator's license was under suspension in violation of General Statutes § 14-215[2] where his license had been suspended for having operated a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a. In his brief, the defendant claims that the court, in denying his motions for a judgment of acquittal that were made during and after the presentation of evidence, improperly concluded that there was sufficient evidence that he had operated his motor vehicle in an area open for "public use" and that the court's jury instruction on that term misstated the law. At oral argument before this court, he modified his position in recognition that the plain language of

---

[2] General Statutes § 14-215 provides: "(a) No person to whom an operator's license has been refused, or whose operator's license or right to operate a motor vehicle in this state has been suspended or revoked, shall operate any motor vehicle during the period of such refusal, suspension or revocation. No person shall operate or cause to be operated any motor vehicle, the registration of which has been refused, suspended or revoked, or any motor vehicle, the right to operate which has been suspended or revoked.

"(b) Except as provided in subsection (c) of this section, any person who violates any provision of subsection (a) of this section shall be fined not less than one hundred fifty dollars nor more than two hundred dollars or imprisoned not more than ninety days or be both fined and imprisoned for the first offense, and for any subsequent offense shall be fined not less than two hundred dollars nor more than six hundred dollars or imprisoned not more than one year or be both fined and imprisoned.

"(c) Any person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension or revocation on account of a violation of subsection (a) of section 14-227a or section 53a-56b or 53a-60d or pursuant to section 14-227b, shall be fined not less than five hundred dollars nor more than one thousand dollars and imprisoned not more than one year, and, in the absence of any mitigating circumstances as determined by the court, thirty consecutive days of the sentence imposed may not be suspended or reduced in any manner. The court shall specifically state in writing for the record the mitigating circumstances, or the absence thereof."

§ 14-215 (a) does not refer to "public use" as an element of the crime. At oral argument, he claimed that (1) he did not violate § 14-215 because a license is not required to operate a motor vehicle on private property without a posted speed limit, and (2) the judgment of conviction should be reversed on the ground of plain error because the parties and the court believed that "public use" was an element of § 14-215 (a). We affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts. Shortly before 7 p.m. on January 20, 2001, Alice Ventresca was getting out of a taxicab near her apartment building at 45 Savings Street in Waterbury. She heard a crash and an automobile engine stop running. She then went to the lobby of her building and saw the defendant, who she knew lived in the same building, getting out of the driver's side of his automobile. He passed her in the lobby and entered an elevator after assuring her that he was all right, despite the large lump that she observed on his head. Ventresca, fearing that the defendant had a concussion, called the police and showed them the car because she feared that someone else had been injured in the crash. She also noticed that the left rear taillight of the defendant's automobile was lit.

Patrolman David McKnight of the Waterbury police department was dispatched to 45 Savings Street and spoke with several individuals who informed him that there had been an accident. After observing the car, which was "fairly damaged," he went to the defendant's apartment. After first denying that he had been in an accident, the defendant admitted that he had been operating the automobile. At that time, the defendant's operator's license was under suspension from December 17, 2000, through December 17, 2003.

In an amended information, the defendant was charged with operating a motor vehicle in a parking

area for ten cars or more while his license was under suspension in violation of § 14-215 (a). Trial was held on June 12, 2001. At the close of the state's case-in-chief, the defendant requested a judgment of acquittal, which the court denied. The defendant then testified. He admitted that his automobile had hit a wall at 45 Savings Street, but testified that it was operated by a friend, Marcel Levesque. He also testified that the accident occurred at approximately 2 p.m. He testified that at approximately 5 p.m., he got into the driver's side of the vehicle to remove the radio. Because the driver's side door was "crimped or jammed against the front fender," it made a loud noise when he opened and closed it. He then went back into the lobby, told Ventresca that he was all right in response to her questioning and went to his apartment. He testified that he told the police officer three or four times that he had not been operating the vehicle. The defendant also testified that he had signed a criminal summons because the officer told him that he would go to jail if he did not do so. On cross-examination, he testified that he did not drive at all on that day because he knew that his license was under suspension. The defendant again requested a judgment of acquittal at the close of all the evidence, which the court denied.

On June 13, 2001, the jury found the defendant guilty. After further testimony, the jury found him guilty on part B of the information, which charged him with having violated § 14-215 (c) in that he had operated a motor vehicle while his license was under suspension pursuant to General Statutes § 14-227b. The defendant's subsequent motions for a judgment of acquittal as to both charges and for a new trial were denied. The court sentenced the defendant to thirty days incarceration.[3] This appeal followed.

[3] The defendant's sentence was to run concurrently with a sentence that he previously had received.

As previously discussed, the defendant modified his claims at oral argument in recognition that the plain language of § 14-215 does not require a showing that the motor vehicle was operated in an area open for "public use." Accordingly, the defendant restated his claims, arguing that (1) he did not violate § 14-215 because a license is not required to operate a motor vehicle on private property where no speed limit is posted, and (2) the judgment of conviction should be reversed on the ground of plain error because the parties and the court believed that "public use" was an element of § 14-215 (a). We disagree with both claims.

We conclude that one whose operator's license is under suspension violates § 14-215 whenever he operates a motor vehicle, regardless of whether it is operated on public or private property. We reach that conclusion after engaging in the two step process required for interpretation of criminal statutes. "Statutory construction . . . presents a question of law over which our review is plenary. . . . According to our long-standing principles of statutory [interpretation], our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Once we ascertain the proper meaning of the statute, we then must undertake due process analysis to assess whether this meaning was apparent enough so as to give the defendant fair warning that his conduct was proscribed." (Citation omitted; internal quotation marks omitted.) *State* v. *Vickers*, 260 Conn. 219, 223–24, 796 A.2d 502 (2002). Not only do we conclude that the words of § 14-215 (a) should be given their plain meaning, but we conclude also that the

defendant had been warned fairly that he was completely prohibited from operating a motor vehicle.

Section 14-215 (a) provides in relevant part: "No person to whom an operator's license has been refused, or whose operator's license or right to operate a motor vehicle . . . has been suspended or revoked, *shall operate any motor vehicle* during the period of such refusal, suspension or revocation. . . ." (Emphasis added.) Mindful that "[w]ords in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended"; (internal quotation marks omitted) id., 224; we conclude that the § 14-215 (a) prohibits absolutely all operation of a motor vehicle, without limitation.

In reaching that conclusion, we note that other statutes in the same chapter of our General Statutes limit their applicability to specified roadways. See General Statutes § 14-212a (highway construction or utility work zones); General Statutes § 14-212b (school zone); General Statutes § 14-216 (highway); General Statutes § 14-218a (public highway, road of specially chartered municipal association or district, parking area, private road with established speed limit, school property); General Statutes § 14-219 (highway; road; parking area for ten or more cars; multiple lane, limited access highway); General Statutes § 14-220 (limited access divided highway, other highway); General Statutes § 14-221 (highway); General Statutes § 14-222 (public highway, road of specially chartered municipal association or district, parking area for ten or more cars, private road with established speed limit, school property); General Statutes § 14-224 (c) and (d) (public highway, limited access highway); General Statutes § 14-225 (public street or highway, parking area for ten or more cars, school property); General Statutes § 14-227a (public highway, road of specially chartered municipal association or district, parking area for ten or more cars, private

road with established speed limit, school property); General Statutes § 14-230 (highway); General Statutes § 14-230a (divided, limited access highway); General Statutes § 14-235 (highway); General Statutes § 14-236 (multiple lane highway); General Statutes § 14-237 (divided highway); General Statutes § 14-238 (controlled access highway); General Statutes § 14-238a (limited access highway); General Statutes § 14-242 (highway); General Statutes § 14-245 (highway); General Statutes § 14-246a (highway); General Statutes § 14-247 (private road or driveway); General Statutes § 14-247a (alley, driveway or building); General Statutes § 14-248a (public highway); General Statutes § 14-257 (public highway, other public place); General Statutes § 14-261 (public highway); General Statutes § 14-262 (highway, bridge); General Statutes § 14-264 (highway, bridge); General Statutes § 14-266 (state highway); General Statutes § 14-267a (highway, bridge); General Statutes § 14-269 (highway, bridge); General Statutes § 14-269a (highway); General Statutes § 14-270 (highway, bridge); General Statutes § 14-271 (highway); General Statutes § 14-272a (public highway); General Statutes § 14-279 (highway, private road, parking area, school property); General Statutes § 14-284 (highway); General Statutes § 14-285 (highway); General Statutes § 14-286a (highway); General Statutes § 14-286b (roadway); General Statutes § 14-286c (highway); General Statutes § 14-286d (highway); General Statutes § 14-288 (public highway); General Statutes § 14-292 (highway); General Statutes § 14-293a (public highway); General Statutes § 14-293b (public highway); General Statutes § 14-296a (public highway). Because § 14-215 contains no such limitation, we conclude that it was meant to apply absolutely to operation of a motor vehicle.

The defendant argues that because General Statutes § 14-36 (a) requires that one needs an operator's license for the operation of a motor vehicle only on a "public

highway . . . or private road on which a speed limit has been established," he did not need a license to drive in the building's parking lot. As a result, he argues, it was irrelevant whether his license had been suspended. Essentially, the defendant asks us to adopt the holding of the Appellate Division of the Circuit Court in *State* v. *Haight*, 2 Conn. Cir. Ct. 79, 194 A.2d 718 (1963). We decline to do so and overrule that decision.

"[W]e are not bound by the precedent of the statutory Appellate Division of the Circuit Court"; *State* v. *Hyatt*, 9 Conn. App. 426, 430, 519 A.2d 612 (1987); although we may find it persuasive. See, e.g., *State* v. *Johnson*, 28 Conn. App. 708, 717, 613 A.2d 1344 (1992), aff'd, 227 Conn. 534, 630 A.2d 1059 (1993). We are not persuaded by *Haight*. There, the defendant appealed from the judgment of conviction for operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227, now § 14-227a, and operating a motor vehicle while his license was under suspension in violation of § 14-215. *State* v. *Haight*, supra, 2 Conn. Cir. Ct. 80. He argued that neither statute applied because he was operating his motor vehicle in a private parking lot. Id. Although both statutes prohibited the "operation" of a motor vehicle without qualification, the court affirmed the judgment of conviction under § 14-227 as consistent with precedent; see *State* v. *Piette*, 16 Conn. Sup. 357 (1949); but reversed the judgment as to the conviction under § 14-215 for the reasons that the defendant in this case now urges us to adopt. See *State* v. *Haight*, supra, 81–82. We conclude that the plain language of the statute is more convincing than the *Haight* analysis.

We also conclude that our interpretation of § 14-215 (a) does not violate the defendant's right to due process. As previously stated, the purpose of due process analysis is to determine whether the defendant had fair warning that his conduct was prohibited. See *State* v. *Vickers*,

supra, 260 Conn. 224. The defendant does not explicitly argue that he was unaware that the suspension of his license precluded him from operating a motor vehicle in the parking lot, although we could infer from his argument that a license was not required that he raises that argument implicitly. Even that implicit argument is undercut by his testimony at trial, where he testified that he did not operate his automobile at all on January 20, 2001, because he knew that his license was under suspension. Accordingly, we conclude that the defendant had been warned fairly that his conduct was prohibited.

We decline to afford extensive review to the defendant's claim that his conviction should be reversed on the ground of plain error because of the mistaken belief of the parties and the court that the lot being open for "public use" was an element of § 14-215 (a). See Practice Book § 60-5. First, we are not required to review the defendant's claim at all, as it was raised only briefly at oral argument and without analysis. See *State* v. *Webb*, 238 Conn. 389, 468 n.56, 680 A.2d 147 (1996). We do note, however, that the court's charge required the jury to find that "[o]ne, that the defendant was operating a motor vehicle at the time and place alleged, two, that he was operating this motor vehicle in a parking area for ten or more cars[4] and, three, that the defendant was operating a motor vehicle at this location while his

---

[4] In charging on the second element, the court instructed the jury in relevant part as follows: "The law defines 'parking area' as lots, areas or other accommodations for the parking of motor vehicles off the street or highway and open to the public use with or without charge.

"Now, with regard to that, open to the public. For an area to be open to the public, it does not have to be open to everybody all the time. The essential feature of public use is that it is not confined to a privileged individual. It is not confined to privileged individuals or groups whose fitness or eligibility is gauged by some predetermined criteria, but is open to the indefinite public. It is the indefiniteness or unrestricted quality of potential users that gives a use its public character. Any parking lot which the general public has access to is a public parking lot for purposes of this case."

license was under suspension." Because the jury was required to find that the lot was open for "public use," in addition to the actual elements of the crime, the defendant cannot complain that he received a more favorable instruction than that to which he was entitled. See, e.g., *State* v. *Gonzalez*, 222 Conn. 718, 730, 609 A.2d 1003 (1992) (*Peters, C. J.*, concurring). We therefore conclude that there was no plain error in this case.

The judgment is affirmed.

In this opinion the other judges concurred.