STATE OF CONNECTICUT *v.* CHRISTOPHER TAYLOR
(AC 30757)

Harper, Robinson and Bear, Js.

Argued September 8, 2010—officially released January 11, 2011

*Erika L. Amarante,* special public defender, with whom was *Laura D. Kirby,* special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Daniel H. Miller*, special deputy assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Christopher Taylor, appeals from the judgment of conviction, rendered after a jury trial, of evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (b) and reckless driving in violation of General Statutes § 14-222 (a). The defendant claims (1) that because the term "accident," in § 14-224 (b), does not encompass intentional conduct, there was insufficient evidence to support his conviction for evading responsibility and (2) there was insufficient evidence for the jury to conclude that the road on which he was driving was within the scope of § 14-222 (a). For these reasons the defendant asserts that the trial court improperly denied his motion for a judgment of acquittal as to both charges. We reject the first claim and agree with the second claim. Accordingly, we affirm the judgment of conviction under § 14-224 (b) and reverse the judgment of conviction under § 14-222 (a).

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On August 23, 2007, the defendant struck the victim, Luigi Legorano, with his motor vehicle while driving on Whittier Avenue in Waterbury. Whittier Avenue is a residential street that runs south to east, perpendicular to Clematis Avenue on the south end and Eastern Avenue on the east end. The portion of Whittier Avenue between the last house on the street and Eastern Avenue is one way, running in an easterly direction. The remainder of Whittier Avenue is a two-way street. Thus, in compliance with posted signage, vehicles may enter

Eastern Avenue from Whittier Avenue, but vehicles may not enter Whittier Avenue from Eastern Avenue. Whittier Avenue can only be accessed from Clematis Avenue on the southern end of the street.

The victim was living at his brother's home, which was located on the end of Whittier Avenue immediately before the one-way portion of the street. On the day of the incident, the victim was playing catch with his nephews and a friend in the street in front of his brother's home. The victim was positioned with his back facing Eastern Avenue. The defendant, who was operating his automobile in a southerly direction on Eastern Avenue, turned onto Whittier Avenue and began traveling the wrong way down the one-way portion of Whittier Avenue. The victim's nephew, who was positioned facing Eastern Avenue, spotted the defendant's automobile and shouted to the victim to alert him that a vehicle was traveling toward him down the one-way portion of Whittier Avenue. The victim then turned around, raised his hands and shouted to the defendant to stop his vehicle. The defendant brought his vehicle to a stop approximately five feet in front of the victim. The victim informed the defendant that he was driving the wrong way down a one-way street and instructed the defendant to turn his vehicle around. The defendant and the victim exchanged words, and the defendant ultimately struck the victim with his vehicle, knocking him to the ground. After striking the victim with his vehicle, the defendant put the vehicle in reverse, backed down the one-way portion of Whittier Avenue onto Eastern Avenue and left the scene.

The police arrived shortly after the incident and interviewed witnesses. The victim's sister-in-law, who had observed a portion of the incident, provided police with the license plate number of the vehicle that had struck the victim. Police determined that the license plate number matched a vehicle registered to the defendant. After

officers left the scene, the victim's brother, Carrado Addona, and a friend, Jason Dunne, drove through the neighborhood, looking for the vehicle that had struck the victim. Addona and Dunne located the vehicle parked a short distance away outside a house on Sunset Avenue. Addona called the police to notify them that he and Dunne had located the vehicle.

Responding to Addona's tip, Raymond Rose, an officer with the Waterbury police department, went to Sunset Avenue and confirmed that the defendant's vehicle was parked in front of a home on Sunset Avenue. Rose knocked on the door and the defendant answered. The defendant admitted to Rose that he had struck the victim with his vehicle on Whittier Avenue. The defendant was arrested and charged in a three count information with: (1) evading responsibility in violation of § 14-224 (b); reckless driving in violation of § 14-222 (a); and operating a vehicle in the wrong direction on a one-way street in violation of General Statutes § 14-239 (a). The first two counts were tried to the jury, and the third count was tried to the court. On September 24, 2008, the defendant was convicted of all three counts.[1] On grounds materially similar to those raised in this appeal, the defendant filed a motion for a judgment of acquittal as to the conviction of evading responsibility and reckless driving. The court denied the motion for a judgment of acquittal as to both counts. Additional facts will be set forth as necessary.

The defendant claims that because there was insufficient evidence to support his conviction of evading responsibility and reckless driving, the trial court improperly denied his motion for a judgment of acquittal. We begin by setting forth the general principles

---

[1] The defendant has not appealed from his conviction on the third count, operating a vehicle in the wrong direction on a one-way street in violation of § 14-239.

that govern our review of the defendant's claims. "The standard of appellate review of a denial of a motion for a judgment of acquittal has been settled by judicial decision. . . . The issue to be determined is whether the jury could have reasonably concluded, from the facts established and the reasonable inferences which could be drawn from those facts, that the cumulative effect was to establish guilt beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Bonner*, 110 Conn. App. 621, 636, 955 A.2d 625, cert. denied, 289 Conn. 955, 961 A.2d 421 (2008). "[W]e have consistently employed a two-part analysis in appellate review of the sufficiency of the evidence to sustain a criminal conviction. . . . First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . That the evidence is circumstantial rather than direct does not diminish the probative force of that evidence. . . . We must be mindful, however, that [a]lthough the jury may draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture." (Internal quotation marks omitted.) *State* v. *McKiernan*, 78 Conn. App. 182, 191–92, 826 A.2d 1210, cert. denied, 266 Conn. 902, 832 A.2d 66 (2003). "[I]nferences which do not have a basis in facts established by the evidence cannot be drawn or relied upon to sustain a verdict." *State* v. *Jackson*, 176 Conn. 257, 264, 407 A.2d 948 (1978).

I

The defendant first claims that the evidence was insufficient to support his conviction of evading responsibility in violation of § 14-224 (b). Specifically, the defendant claims that there was insufficient evidence

for a jury to conclude that he was involved in an accident. The defendant asserts that the term accident, as it is used in § 14-224 (b),[2] encompasses only unintentional conduct. The defendant argues that because the state's evidence indicated that his conduct in striking the victim with the vehicle was intentional, there is insufficient evidence to support his conviction under § 14-224 (b). We disagree with the defendant's claim.

This court addressed a similar claim in *State* v. *Rembert*, 26 Conn. App. 145, 598 A.2d 1101 (1991). In *Rembert*, the defendant intentionally drove his vehicle at a group of teenagers but instead struck a young boy and the boy's mother, who were standing nearby. Id., 147. The trial court granted the defendant's motion for a judgment of acquittal on the charge of evading responsibility in violation of § 14-224, reasoning that the statute did not apply to intentional conduct. Id., 146. The state appealed, arguing that the court improperly concluded that the term "accident" as used in § 14-224 did not apply to intentional conduct, and, in the alternative, that even if the statute did not apply to intentional conduct, there was sufficient evidence to support the jury's guilty verdict. Id., 146–47. This court reversed the judgment of acquittal. Id., 149. We did not, however, "engage in the exercise of defining the term 'accident' within the meaning of [§ 14-224]." Id., 148. Rather, we held that "ample evidence existed permitting the jury to find that the defendant drove his car at the teenagers, intending to injure them, and that he instead unintentionally struck [the victim]. . . . [S]ince the defendant actually intended to strike the teenagers with the car,

---

[2] General Statutes § 14-224 (b) provides in relevant part: "Each person operating a motor vehicle who is knowingly involved in an accident which causes physical injury . . . to any other person or injury or damage to property shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license number and registration number to the person injured or to the owner of the injured or damaged property, or to any officer or witness . . . ."

hitting [the victim] instead constituted an 'accident' under any definition of the word." Id., 148–49.

In the present case, we are presented with a situation similar to that in *Rembert*. As was true in *Rembert*, we see no reason to define the term "accident" in § 14-224, as there is sufficient evidence in the record to support the jury's verdict under any definition of the term.[3]

The defendant and the state offered differing accounts of how the collision on Whittier Avenue occurred. The victim and several of the state's witnesses testified to a series of events tending to show that the defendant intentionally drove his vehicle into the victim while the victim was standing in the street. The defendant's testimony, however, indicated that he did not intend to strike the victim with his vehicle, but instead, did so unintentionally after the victim leaped in front of his vehicle while he was attempting to drive past the victim.

The defendant asserts that the term "accident" in § 14-224 (b) does not encompass intentional conduct and, therefore, the evidence is insufficient to support his conviction. The defendant claims that there was insufficient evidence demonstrating that the collision was caused by unintentional conduct because under his version of the events the victim acted intentionally by leaping in front of the vehicle,[4] and under the state's version of the events he acted intentionally in striking the victim. The jury was not required, however, to accept either the state's version of the events or the defendant's version of events in its entirety. "It is the

---

[3] Although the state's main argument on appeal is that the word "accident" encompasses both intentional and unintentional conduct, the state also asserts, in the alternative, that there was sufficient evidence to support the defendant's conviction under any definition of the word.

[4] We reiterate, however, that the defendant's own testimony indicated that, from his perspective, his conduct in striking the victim with his vehicle was unintentional.

function of the jury to consider the evidence and judge the credibility of witnesses. . . . The jury is free to accept or reject *all or part* of a witness' testimony." (Citation omitted; emphasis added.) *State* v. *Sanders*, 54 Conn. App. 732, 738, 738 A.2d 674, cert. denied, 251 Conn. 913, 739 A.2d 1250 (1999).

In this case, although there was testimony indicating that the defendant acted intentionally, the defendant testified that he did not act intentionally but rather unintentionally struck the victim with his vehicle as he was attempting to drive past the victim.[5] Thus, there was sufficient evidence in the record for the jury to conclude that the collision was the result of unintentional conduct on the part of the defendant, thereby constituting an accident under any definition of the term. As such, we affirm the defendant's conviction of evading responsibility in violation of § 14-224 (b).

II

The defendant also claims that there was insufficient evidence to support his conviction of reckless driving in violation of § 14-222 (a). We agree.

Section 14-222 (a) provides in relevant part: "No person shall operate any motor vehicle upon any public highway of the state, or any road of any specially chartered municipal association or of any district . . . or in any parking area for ten cars or more or upon any private road on which a speed limit has been established . . . or upon any school property recklessly, having regard to the width, traffic and use of such highway, road, school property or parking area, the intersection of streets and the weather conditions. . . ."

---

[5] As in *State* v. *Pezzuti*, 70 Conn. App. 840, 848, 800 A.2d 644, cert. denied, 261 Conn. 931, 806 A.2d 1069 (2002), cert. denied, 537 U.S. 1136, 123 S. Ct. 922, 154 L. Ed. 2d 827 (2003), this is a case in which "the defendant's own testimony contradicts [his] claim on appeal . . . ."

Thus, § 14-222 (a) is limited in scope to reckless driving that takes place on those highways, roads, school properties or parking areas that are expressly enumerated in the statute. In a substitute information, the state charged the defendant with reckless driving on a "municipal road" in violation of § 14-222 (a). In its jury instruction on the charge of reckless driving, the court stated: "In order for you to find the defendant guilty of reckless driving, the state must prove that, one, the defendant operated a motor vehicle on a municipal road; two, and he operated said vehicle recklessly with [regard] to the width, traffic, use, intersection of streets, and the weather conditions of said road."

Therefore, to sustain a conviction for reckless driving in violation of § 14-222 (a), as charged, and in accordance with the court's instruction, it was the state's burden to establish beyond a reasonable doubt that the defendant drove recklessly and that he did so on a municipal road. See *State* v. *Williams*, 220 Conn. 385, 398, 599 A.2d 1053 (1991) ("[i]t is axiomatic that the state's burden of proof beyond a reasonable doubt applies to each and every element comprising the offense charged" [internal quotation marks omitted]). The defendant alleges that the evidence was insufficient to establish that Whittier Avenue was a municipal road.[6] After a thorough review of the evidence presented at trial, we conclude that there was insufficient evidence regarding the character of Whittier Avenue, specifically, what entity owned or controlled it and whether it was public or private, for the jury to conclude that Whittier

[6] We note that the specific term "municipal road," which was used by the state in its substitute information and by the court in its jury charge, does not appear in § 14-222 (a). The defendant does not challenge the state's assumption that the term "municipal road" refers to a road that is within the definition of those roads and highways specifically enumerated in § 14-222 (a), nor does he challenge the legal adequacy of the court's instruction as to this offense.

Avenue was a municipal road within the purview of § 14-222 (a).

At trial, the state offered into evidence an aerial map of Waterbury depicting Whittier Avenue and surrounding streets. The court took judicial notice that the map was "an aerial map of the city of Waterbury in 2004. And . . . that . . . the direction of north is correct and that the streets on it, the names et cetera." The map, however, contained only street names, house numbers and boundary lines. There was nothing on the map that indicated what entity owned or maintained the streets it depicted, or whether the streets are private or open to the public, nor does the map contain any information from which the jury could reasonably infer these facts.

Also, there was testimony from Rose that Whittier Avenue was within his patrol area as a Waterbury police officer, and that while on patrol he is generally looking for "violation[s] of traffic laws and also taking calls in the area." Rose also testified that he arrived on Whittier Avenue on the day of the incident only after he was dispatched in response to an emergency call. Rose did not testify, however, as to whether Whittier Avenue was a municipal road or whether his patrol area was limited to public roads under the ownership or control of Waterbury. Additionally, there was testimony that there were street signs on Whittier Avenue indicating that a portion of Whittier was only open to one-way traffic. There was no evidence, however, as to what entity posted those street signs or what entity was responsible for maintaining those street signs.[7]

---

[7] In the present case there is substantially less evidence as to the character of the road in question than in either of the cases relied on by the dissent. The first case relied on by the dissent, *State* v. *Peirson*, 2 Conn. Cir. Ct. 660, 204 A.2d 838 (1964), is not binding on this court; see *State* v. *Hackett*, 72 Conn. App. 127, 135, 804 A.2d 225, cert. denied, 262 Conn. 904, 810 A.2d 270 (2002); nor do we find it persuasive. In *Peirson*, the jury was presented with the following evidence regarding the character of the street in question: (1) it was one of three streets assigned to an officer's patrol area; (2) there

## This evidence, when construed as a whole and in a light most favorable to supporting the jury's verdict, is

was a railroad station on the street; (3) there were numerous restaurants on the street; (4) there was a theater in the area; (5) there was a taxi stand on the street; (6) there was vehicular traffic on the street moving in both directions; (7) cars were parked on both sides of the street; (8) there was a police call box on the street; and (9) on the day of the incident at issue, the officer had to be careful to avoid vehicular traffic when crossing the street. *State* v. *Peirson*, supra, 662–63. Similarly, in the second case relied on by the dissent, *State* v. *Harrison*, 30 Conn. App. 108, 618 A.2d 1381 (1993), aff'd, 228 Conn. 758, 638 A.2d 601 (1994), the jury had before it substantially more evidence regarding the character of the road in question than the jury did in the present case. In *Harrison*, the court noted that there was evidence that: (1) town police regularly patrolled the street; (2) the street was lined with businesses; (3) there were traffic control signs on the street; (4) there were stop signals on the street; (5) there was a posted speed limit; and (6) the street was maintained by the state department of transportation. Id., 119.

Although no one factor is dispositive, it is apparent that the evidence regarding the character of the roadways in *Peirson* and in *Harrison* was substantially greater in both amount and probative value than the evidence before the jury in the present case. It is logical then, that in *Peirson* and *Harrison*, when the jury had substantially more evidence of a more probative nature upon which to base its conclusions concerning the character of the roadways at issue, a reviewing court would hold that the evidence was sufficient to support the jury's verdict, and in the present case, where the evidence is substantially less in both amount and probative value, we conclude that the evidence was insufficient to support the jury's verdict. Therefore, the cases relied on by the dissent are factually distinguishable from the present case.

We reiterate that establishing that Whittier Avenue was a road within the purview of § 14-222 (a) was an essential element of the crime of reckless driving, which the state had the burden to prove beyond a reasonable doubt. See *State* v. *Williams*, supra, 220 Conn. 398. "It is fundamental that proof of guilt in a criminal case must be beyond a reasonable doubt. . . . The [reasonable doubt concept] provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law. . . . At the same time, by impressing upon the [fact finder] the need to reach a subjective state of near certitude of the guilt of the accused, the [reasonable doubt] standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself." (Citations omitted; internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 105, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). Respectfully, in light of the dearth of evidence concerning the character of Whittier Avenue, we do not agree with the dissent that the evidence in the present case was sufficient for the jury to conclude, beyond a reasonable doubt, that it was a municipal road.

not sufficient to support the defendant's conviction for reckless driving in violation of § 14-222 (a).[8] It was the state's burden to establish, beyond a reasonable doubt, that Whittier Avenue was a municipal road. The record, however, does not contain any evidence from which the jury, without resorting to speculation and conjecture, could infer that Whittier Avenue was a municipal road. Because there was insufficient evidence to support the defendant's conviction of reckless driving in violation

[8] The dissent relies upon additional evidence in the record that the dissent claims supports the conclusion that Whittier Avenue was open to the public. Specifically, the dissent states that the jury reasonably could conclude that Whittier Avenue was public because there was evidence that the defendant had used it on the day of his arrest, there was evidence that other individuals had driven the wrong way down Whittier Avenue in the past, and there was no evidence that the road was closed off to the public.

Respectfully, we disagree that, when viewed in conjunction with the other evidence presented in this case, this evidence supported a finding that Whittier Avenue was a municipal road. Viewed in the context of the other facts before us, the evidence that the defendant had used Whittier Avenue on the day of his arrest and that other individuals had traveled the wrong way down Whittier Avenue in the past does not logically support a finding that Whittier Avenue was open to the public. Our conclusion in this regard is bolstered by the fact that the defendant and the other individuals to whom the dissent refers had operated their vehicles in the wrong direction on Whittier Avenue, and, thus, had failed to obey posted signage stating "do not enter." Thus, we are not persuaded by the dissent's assertion that evidence that some members of the public had used Whittier Avenue in a manner that was in violation of posted signage supports an inference that it was open to the public.

Moreover, we do not accept as valid the premise that a lack of evidence that a street was "closed off" to the public supports an inference that the street is public. Certainly evidence of some barrier or signage indicating that a street was closed to the public would be strong evidence that the street was private. We do not agree, however, that in the context of the present facts, a lack of such barriers or signage supports a reasonable inference that the road was public. It was not the defendant's burden to demonstrate that Whittier Avenue was not a municipal road; it was the state's burden to prove, beyond a reasonable doubt, that Whittier Avenue was a municipal road.

The additional evidence upon which the dissent relies, when viewed in conjunction with the other evidence in this case, was not sufficient for the jury to find, beyond a reasonable doubt, that Whittier Avenue was a municipal road.

of § 14-222 (a), the court improperly denied the defendant's motion for a judgment of acquittal as to that charge.

The judgment is reversed only as to the conviction of reckless driving and the case is remanded with direction to render judgment of acquittal as to that offense. The judgment is affirmed in all other respects.

In this opinion BEAR, J., concurred.

ROBINSON, J., concurring in part and dissenting in part. I agree with and join part I of the majority opinion. I dissent, however, from part II of the opinion because I conclude that the jury had sufficient evidence to find the defendant, Christopher Taylor, guilty of reckless driving.

The state charged the defendant with reckless driving on a "municipal road" in violation of General Statutes § 14-222 (a). For the defendant to be found guilty of reckless driving, the state must prove that he operated a motor vehicle on "any public *highway* of the state, or any road of any specially chartered municipal association or of any district . . . or in any parking area for ten cars or more or upon any private road on which a speed limit has been established . . . or upon any school property recklessly, having regard to the width, traffic and use of such highway, road, school property or parking area, the intersection of streets and the weather conditions. . . ." (Emphasis added.) General Statutes § 14-222 (a). Although the term "municipal road" does not appear in § 14-222 (a), it is fairly encompassed within the definition of "highway" set forth in General Statutes § 14-1 (40).

Section 14-1 (40) defines "highway" to include "any state or other public highway, road, street, avenue, alley, driveway, parkway or place, under the control

of the state or any political subdivision of the state, dedicated, appropriated or opened to public travel or other use . . . ." Accordingly, the state was required to prove beyond a reasonable doubt that Whittier Avenue in Waterbury (1) was a road under the control of a political subdivision of the state and (2) was under the political subdivision's control because it was either dedicated, appropriated or opened to public travel or other use.

Our courts have applied this definition to factual circumstances similar to the case at bar. In *State* v. *Peirson*, 2 Conn. Cir. Ct. 660, 204 A.2d 838 (1964),[1] the defendant was charged with operating a motor vehicle with a suspended license in violation of General Statutes § 14-215. The jury found him guilty, and he thereafter moved to set aside the verdict, which the court denied. Id., 660–61. On appeal, he challenged the denial of his motion to set aside the verdict, claiming that the state had failed to present evidence that Bank Street in New London, the street on which he was arrested, was a public highway. Id., 662. On appeal, the court treated the defendant's claim as a challenge "that the state had failed to prove the guilt of the defendant beyond a reasonable doubt on the evidence presented." Id., 661.

The court first noted that the offense in question required proof that the defendant operated his vehicle on a public highway. Id., 662. The court then looked to § 14-1 (14), the predecessor of § 14-1 (40), to determine the definition of "highway." Id. That section defined "highway" to include "any trunk line highway, state aid

---

[1] We are not bound by the precedent of the statutory Appellate Division of the Circuit Court. *State* v. *Hyatt*, 9 Conn. App. 426, 430, 519 A.2d 612 (1987). We may, however, find such precedent persuasive. See, e.g., *State* v. *Johnson*, 28 Conn. App. 708, 717, 613 A.2d 1344 (1992) (agreeing with and adopting Circuit Court's interpretation of evading responsibility statute), aff'd, 227 Conn. 534, 630 A.2d 1059 (1993).

road or other public highway, road, street, avenue, alley, driveway, parkway or place, under the control of the state or any political subdivision thereof, dedicated, appropriated or opened to public travel or other use." (Internal quotation marks omitted.) Id. Using this definition as its analytical framework, the court examined the evidence to determine whether Bank Street was a public highway. Id., 662–63.

The court found that, according to the police officer's testimony, the officer had been assigned to patrol Bank Street as part of "police beat No. 3," which indicated that "the political subdivision, the municipality, had this area, Bank Street, under its control." Id., 662. The court then identified evidence that indicated Bank Street was opened to public travel, particularly, that "the railroad station was located on Bank Street, the defendant entered a restaurant which was located on Bank Street, the Capitol Theater is in the area, as are a taxi stand and numerous restaurants, and people were walking thereabouts. Cars were parked on both sides of the street, and traffic was moving in both directions. The restaurant the defendant entered is about 150 feet from an intersection, and the officer had to cross the street and, in so doing, had to be careful of vehicular traffic. There was a police call box at the corner of State and Bank Streets." Id., 662–63. The court concluded that "there was ample evidence that Bank Street was a public highway, that it was under the control of the city of New London and that it was dedicated, appropriated or opened to public travel or other use." Id., 663.

Similarly, in *State* v. *Harrison*, 30 Conn. App. 108, 618 A.2d 1381 (1993), aff'd, 228 Conn. 758, 638 A.2d 601 (1994), the defendant challenged his conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1). On appeal, he claimed that the state had failed to prove beyond a reasonable doubt that he had operated his motor vehicle on a public

highway, as was required by § 14-227a (a) (1). Id., 118. This court noted that "public highway" was not a term of art and stated that "[t]he essential feature of a highway is that every traveler has an equal right in it with every other traveler." (Internal quotation marks omitted.) Id., 118–19. This court then examined the record for evidence that indicated that the roadway in question was open to the public at large. Id., 119. This court found that there was evidence, in the form of testimony by the police officer who had arrested the defendant, that the defendant had *used* the roadway on the night in question and that the roadway was *regularly patrolled by town police.* Id. Furthermore, this court found that there was evidence that the roadway was lined with business establishments, had traffic control signs and stop signals and was maintained by the state department of transportation on some occasions. Id. This court sustained the verdict, concluding that the jury reasonably could have inferred that the roadway in question was not a private way, but rather, a public highway. Id.

In the present case, there was ample evidence presented that Whittier Avenue was under Waterbury's control. Evidence, in the form of testimony and exhibits, showed that there were traffic control signs posted along Whittier Avenue. Officer Raymond Rose of the Waterbury police department testified that Whittier Avenue was within his patrol area,[2] that he had been

---

[2] The transcript reveals the following examination of Rose by the prosecutor:

"[The Prosecutor]: And what—what area are you patrolling in Waterbury?

"[The Witness]: Alpha six.

"[The Prosecutor]: And what's alpha—alpha six?

"[The Witness]: Alpha six is covering the Bunker—Bunker town—Bunker Avenue area all the way over to the Watertown line.

"[The Prosecutor]: Okay. So, would the Whittier—Whittier Avenue, Eastern Avenue area be in—in your—in your area to—

"[The Witness]: Yes.

"[The Prosecutor]: (Continuing)—patrol? And are you familiar with . . . that area?

in that area before, that the purpose of his patrol was to enforce traffic laws and that he in fact did enforce traffic violations that had occurred on Whittier Avenue on the day in question. Therefore, Rose's testimony indicates that Whittier Avenue was under Waterbury's control.

There was also evidence presented that Whittier Avenue was opened to public travel. There was testimony that, on the day in question, the defendant had used Whittier Avenue in an attempt to get to Sunset Avenue. There was testimony that many people had driven in the wrong direction on the one-way section of Whittier Avenue on prior occasions.[3] The state presented numerous photographs indicating that Whittier Avenue was opened to oncoming pedestrians and drivers from Clematis Avenue and was not closed off to the public or accessible only by a limited number of persons. Moreover, the state presented an aerial map that demonstrated that Whittier Avenue was not only of common convenience to the residents of the numerous homes alongside it and to their guests but also served as an access route from Clematis Avenue to Eastern Avenue. The sum of this evidence, and the reasonable inferences drawn therefrom, indicate that Whittier Avenue was opened to public travel.

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether

"[The Witness]: Yes. . . .

"[The Prosecutor]: Now, when you're on patrol, what are some things you're looking for?

"[The Witness]: Well, basically when on patrol, you're looking for violation of motor vehicle, violation of traffic laws, and also taking calls in the area."

[3] The transcript reveals the following examination of the victim, Luigi Legorano, by the prosecutor:

"[The Prosecutor]: All right. And if someone was to drive up that one—that way, would they be able to just—to go straight up that street?

"[The Witness]: No. You'd have to take a wide [turn.] . . . Many people have gotten hung up here before. You have to take a really wide to—to get onto Whittier Avenue."

there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Smith*, 273 Conn. 204, 210, 869 A.2d 171 (2005).

When presented with a challenge to the sufficiency of the evidence, we note that "[i]n considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Fauntleroy*, 101 Conn. App. 144, 153, 921 A.2d 622 (2007). On the basis of the cumulative impact of the facts presented and the inferences that the jury was entitled to draw therefrom, there was ample evidence for the jury to reasonably have concluded that Whittier Avenue was a public highway, that it was under the control of the city of Waterbury and that it was opened to public travel.

For the reasons given, I respectfully dissent from the order to render a judgment of acquittal as to the reckless driving charge.