State of Nebraska, appellee, v.
Benjamin Frederick, appellant.
___ N.W.2d ___

Filed June 26, 2015.    No. S-14-727.

1. **Statutes: Appeal and Error.** The meaning of a statute is a question of law, and a reviewing court is obligated to reach conclusions independent of the determination made below.
2. **Statutes.** A statute is not to be read as if open to construction as a matter of course.
3. **Statutes: Legislature: Intent.** It is the court's duty, if possible, to discover the Legislature's intent from the language of the statute itself.
4. ____: ____: ____. Only if a statute is ambiguous or if the words of a particular clause, taken literally, would plainly contradict other clauses of the same statute, lead to some manifest absurdity, to some consequences which a court sees plainly could not have been intended, or to a result manifestly against the general term, scope, and purpose of the law, may the court apply the rules of construction to ascertain the meaning and intent of the lawgiver.
5. **Statutes.** A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way.
6. **Legislature: Intent.** The intent of the Legislature is generally expressed by omission as well as by inclusion.
7. **Statutes: Appeal and Error.** An appellate court is not at liberty to add language to the plain terms of a statute to restrict its meaning.
8. **Statutes: Motor Vehicles: Licenses and Permits.** Because Neb. Rev. Stat. § 60-4,108 (Cum. Supp. 2014) is plainly written without the limitation of "public highways" found in other statutes, the Nebraska Supreme Court does not read that limitation into the statute.

Appeal from the District Court for Buffalo County, John P. Icenogle, Judge, on appeal thereto from the County Court for Buffalo County, Gerald R. Jorgensen, Jr., Judge. Judgment of

District Court affirmed in part, and in part sentence vacated and cause remanded for resentencing.

Greg C. Harris for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

McCORMACK, J.

## NATURE OF CASE

The defendant was convicted in county court of driving during revocation in violation of Neb. Rev. Stat. § 60-4,108(1) (Cum. Supp. 2014), which states:

> It shall be unlawful for any person to operate a motor vehicle during any period that he or she is subject to a court order not to operate any motor vehicle for any purpose or during any period that his or her operator's license has been revoked or impounded pursuant to conviction or convictions for violation of any law or laws of this state, by an order of any court, or by an administrative order of the director.

The only evidence presented at the trial besides the defendant's driving record reflecting that the defendant's license was revoked was the testimony of a local law enforcement officer. The officer testified that he found the defendant driving in a store parking lot. There was a passenger in the vehicle, and the vehicle was unlicensed. There was no evidence concerning the ownership of the vehicle. The officer testified that he did not see the defendant drive outside of the parking lot. The question on appeal is whether the evidence was sufficient to support the conviction.

## BACKGROUND

Benjamin Frederick was found guilty in a bench trial before the county court of driving during revocation in violation of

§ 60-4,108(1), a Class II misdemeanor. He was sentenced to 30 days of jail time and 9 months of probation.

Before trial, Frederick moved to suppress the testimony of the State's only witness, the officer who observed him driving with a suspended license. The officer testified that Frederick was driving a vehicle without license plates in a Wal-Mart parking lot in Kearney, Nebraska. The officer never observed Frederick operate the vehicle outside of the parking lot.

Arguments were not made on the record, but the court responded that the issue raised by Frederick in the motion to suppress "appear[ed] to be more of a trial issue." The court said that it would need "to read all these statutes and see how the scheme fits" before deciding the motion. The motion was later denied.

At trial, the officer testified that around 3 p.m. on December 31, 2012, a caller reported that "Benjamin Frederick" was driving without a license in the Wal-Mart parking lot. The officer responded to the call in a marked police cruiser. The officer observed the vehicle described by the caller when he arrived at the Wal-Mart parking lot. The vehicle did not have license plates. The officer was able to visually identify the driver as Frederick. There was a female passenger in the vehicle.

The officer followed Frederick's vehicle as it weaved up and down the parking lot aisles. The officer confirmed on his in-car mobile data terminal that Frederick's driver's license was revoked. The officer did not activate the police cruiser's lights, but Frederick eventually pulled into a parking space and exited the vehicle. Frederick admitted to the officer that he did not have a driver's license.

The State submitted into evidence Frederick's records with the Department of Motor Vehicles. The records show that at the time the officer observed Frederick driving in the Wal-Mart parking lot, his license was administratively revoked pursuant to "Section 60-498.02 et seq." as a result of his second offense of driving under the influence (DUI),

in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010). The administrative license revocation was to begin on July 7, 2012, and end on July 7, 2013.

The records also contain the county court judgment for second-offense DUI and its order sentencing Frederick to a 1-year license revocation beginning on November 14, 2012, and ending on July 7, 2013.

The records do not reflect an explicit assessment of points under the points system established in Neb. Rev. Stat. §§ 60-4,182 to 60-4,186 (Reissue 2010 & Cum. Supp. 2014).

Frederick moved to dismiss the State's case for failure to make a prima facie case. The arguments were not made on the record, but the court expressed that there had already been a motion to suppress on the same issue. The court opined that it had found the State's argument persuasive and saw "no reason to deviate from that reading of the law at this time." When the court subsequently discussed with Frederick the scheduling of sentencing, it stated that it assumed Frederick was planning to appeal to "get a definitive decision from a higher court."

Frederick appealed to the district court, arguing that the offense of driving under revocation cannot occur in a privately maintained parking lot. The district court affirmed the conviction.

The district court observed that there are two separate criminal offenses in the Motor Vehicle Operator's License Act[1] concerning the operation of a motor vehicle once a person has obtained an operator's license and has forfeited it. One offense is contained in § 60-4,186, the other is contained in § 60-4,108. Frederick was charged and convicted of violating § 60-4,108.

Section 60-4,186 provides, "It shall be unlawful to operate a motor vehicle on the public highways after revocation of an operator's license under sections 60-4,182 to 60-4,186 . . . ."

---

[1] See Neb. Rev. Stat. §§ 60-462 to 60-4,188 (Reissue 2010 & Cum. Supp. 2014).

Highway is defined by § 60-470 as "the entire width between the boundary limits of any street, road, avenue, boulevard, or way which is publicly maintained when any part thereof is open to the use of the public for purposes of motor vehicle travel." Alley is defined by § 60-607 as "a highway intended to provide access to the rear or side of lots or buildings and not intended for the purpose of through vehicular traffic." There is no dispute that the Wal-Mart parking lot is not a "highway."

Section 60-4,183 is the pertinent statute describing the revocation to which § 60-4,108 applies. It states:

Whenever it comes to the attention of the director that any person has, as disclosed by the records of the director, accumulated a total of twelve or more points within any period of two years, as set out in section 60-4,182, the director shall (1) summarily revoke the operator's license of such person . . . .

The district court reasoned that § 60-4,186 and its limitation to driving with a revoked license "on the public highways" pertains only to licenses that have been revoked by the Department of Motor Vehicles due to an accumulation of points under the point system.

Section 60-4,108 states in relevant part:

(1) It shall be unlawful for any person to operate a motor vehicle during any period that he or she is subject to a court order not to operate any motor vehicle for any purpose or during any period that his or her operator's license has been revoked or impounded pursuant to conviction or convictions for violation of any law or laws of this state, by an order of any court, or by an administrative order of the director.

The district court reasoned that, unlike § 60-4,186, the provisions of § 60-4,108 are not limited to driving under revocation on public highways. Frederick's license had been revoked pursuant to a conviction, by a court order, and by an administrative order of the director, as described in § 60-4,108. Therefore, the district court concluded that the

evidence was sufficient to support Frederick's conviction. Frederick appeals.

## ASSIGNMENT OF ERROR

Frederick assigns, consolidated, that the district court erred in holding that § 60-4,108 does not require proof the driver was operating on a public highway and in thereby affirming his conviction and sentence.

## STANDARD OF REVIEW

[1] The meaning of a statute is a question of law, and a reviewing court is obligated to reach conclusions independent of the determination made below.[2]

## ANALYSIS

Section 60-4,108(1) contains no express limitation on the location of the offender's operation of a vehicle during a period of suspension, revocation, or impoundment. The lower courts thus read § 60-4,108(1) as containing no such requirement. Accordingly, the lower courts concluded that driving with a revoked license in a parking lot violated § 60-4,108(1). Frederick argues on appeal that we should read the limitation of "on the public highways" into § 60-4,108(1). We disagree.

[2-4] A statute is not to be read as if open to construction as a matter of course.[3] It is the court's duty, if possible, to discover the Legislature's intent from the language of the statute itself.[4] Only if a statute is ambiguous or if the words of a particular clause, taken literally, would plainly contradict other clauses of the same statute, lead to some manifest absurdity, to some consequences which a court sees plainly could not have been intended, or to a result manifestly

---

[2] *In re Application of City of North Platte*, 257 Neb. 551, 599 N.W.2d 218 (1999).

[3] *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012).

[4] See *Fisher v. Payflex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013).

against the general term, scope, and purpose of the law, may the court apply the rules of construction to ascertain the meaning and intent of the lawgiver.[5]

Courts in other jurisdictions interpreting laws that do not explicitly limit the crime of driving with a revoked or suspended license to driving on "public highways" find the laws unambiguous and refuse to add such a limitation.[6] In *State v. Kelekolio*,[7] the court explained that adding the requirement of being on a "'public highway,'" when that limitation is not expressed in the relevant statute for driving without a license, is "contrary to the literal and unambiguous language of the statute."[8] In *Guidry v. State*,[9] the court similarly reasoned that there was no language requiring proof of operation of a motor vehicle upon a public highway in the relevant statute and said, "We do not place special interpretations or requirements upon statutes which are clear and unambiguous on their face."[10] The court further explained that "[i]f the legislature had wished to limit the focus of the statute to operation of a vehicle upon a highway, it most certainly could have done so."[11]

The court in *State v. Hackett*[12] also held that because the relevant statute concerning operating a motor vehicle under suspension, revocation, or refusal contained no language limiting the location of operation, the plain meaning of the

---

[5] See, *Anthony, Inc. v. City of Omaha*, 283 Neb. 868, 813 N.W.2d 467 (2012); *In re Interest of Wickwire*, 259 Neb. 305, 609 N.W.2d 384 (2000).

[6] See, *Cremer v. Anchorage*, 575 P.2d 306 (Alaska 1978); *State v. Hackett*, 72 Conn. App. 127, 804 A.2d 225 (2002); *State v. Kelekolio*, 94 Haw. 354, 14 P.3d 364 (Haw. App. 2000); *Guidry v. State*, 650 N.E.2d 63 (Ind. App. 1995); *State v. Bauman*, 552 N.W.2d 576 (Minn. App. 1996).

[7] *State v. Kelekolio, supra* note 6.

[8] *Id.* at 357, 14 P.3d at 367.

[9] *Guidry v. State, supra* note 6.

[10] *Id.* at 66.

[11] *Id.*

[12] *State v. Hackett, supra* note 6.

statute "prohibits absolutely all operation of a motor vehicle, without limitation."[13] The court said that consideration of the statute in light of other statutes in the same chapter only reinforced this reading, because those statutes clearly demonstrated that the Legislature added the specific limitation of public highways when it wished to.[14] Given this plain reading, the court rejected the defendant's contention that because an operator's license is generally required by law only for driving on highways or public roads for which a speed limit has been established, the defendant could not be convicted of driving in an apartment complex parking lot with a suspended license.

[5-7] We likewise do not find § 60-4,108(1) ambiguous. A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way.[15] The fact that § 60-4,108(1) does not expressly limit where the driver cannot drive with a revoked license does not make it susceptible of more than one meaning. The intent of the Legislature is generally expressed by omission as well as by inclusion.[16] We are not at liberty to add language to the plain terms of a statute to restrict its meaning.[17]

We observe that other Nebraska statutes expressly limit their application to driving on public highways. Most notably, the driving-under-revocation statute that Frederick was not charged with, § 60-4,186, expressly limits its application to "operat[ing] a motor vehicle on the public highways after revocation of an operator's license under sections 60-4,182 to 60-4,186." Section 60-4,108, in contrast—the statute Frederick was charged with—states it shall be unlawful for any person

[13] *Id.* at 133, 804 A.2d at 228.

[14] *State v. Hackett, supra* note 6.

[15] *Fisher v. Payflex Systems USA, supra* note 4.

[16] See *In re Interest of Samantha C.*, 287 Neb. 644, 843 N.W.2d 665 (2014).

[17] See *Black v. Brooks*, 285 Neb. 440, 827 N.W.2d 256 (2013).

to operate a motor vehicle "during any period" that he or she is subject to a court order not to operate any motor vehicle for any purpose or during any period that his or her operator's license has been revoked or impounded pursuant to a conviction or convictions, by an order of any court, or by an administrative order of the director.

Section 60-4,186 focuses on where the driving occurs, while § 60-4,108 focuses on the period of time when the driving occurs. Section 60-4,108 was plainly intended to have a broader application. If the Legislature had wished to limit § 60-4,108 to driving "on the public highways," it knew how to do so. That the Legislature did not add such limiting language is an unambiguous expression of its intent that driving "on the public highways" is not an element of § 60-4,108.

We disagree with Frederick's argument that failing to read "on the public highways" into § 60-4,108(1) contradicts other clauses or leads to some manifest absurdity, some consequence the Legislature plainly could not have intended, or to results manifestly against the general term, scope, and purpose of the law.[18] Frederick argues it is absurd to be able to commit a crime of driving with a revoked operator's license in a place where an operator's license is not otherwise generally required. Frederick further argues it is absurd that it would be unlawful under § 60-4,108(1) to drive in a parking lot during a period of revocation "pursuant to conviction or convictions for violation of any law or laws of this state, by an order of any court, or by an administrative order of the director," while it is unlawful under § 60-4,186 to drive "on the public highways" during a period of revocation imposed by order of the director after the accumulation of 12 points under the point system.

Other courts have concluded that a broadly crafted statute pertaining to driving under revocation, suspension, or refusal is logical and consistent with other motor vehicle statutes that limit their application to driving on public highways. In

---

[18] See *Anthony, Inc. v. City of Omaha, supra* note 5.

*Kelekolio*, the court rejected the idea that the driving-with-a-revoked-license statute should be construed as limited to driving on public highways simply because other statutory sections expressly required operation on a public highway and stated that the legislative purpose of the chapter was to foster highway safety.[19] The court in *Guidry* distinguished persons who have never obtained an operator's license from those who have had their license removed after demonstrating that their driving presents a danger to others.[20] The court observed, "Statutes providing for forfeiture of driving privileges . . . are designed to protect the public from persons who have demonstrated that they are unable to obey traffic laws established for the safety of citizens . . . ."[21] The court reasoned that the absence of limiting language in the driving-with-a-revoked-license statute was "the legislature's recognition that the danger to the public is equally as great on private property used by the public, such as shopping center parking lots and apartment complex roads, as it is on public highways."[22]

Sections 60-4,108 and 60-4,183 are not themselves part of the Nebraska Rules of the Road, but those rules illustrate that the absence of an "on public highways" limitation in § 60-4,108, when such limitation is present in § 60-4,183, is part of a consistent and logical scheme. While an operator's license is not generally required to drive in Nebraska on privately owned parking lots, serious traffic offenses presenting an immediate danger to the public, such as reckless driving, careless driving, and DUI, are punishable offenses under the Nebraska Rules of the Road when committed in a parking lot open to public access.[23] Specifically, § 60-6,108(1)

---

[19] *State v. Kelekolio, supra* note 6.

[20] *Guidry v. State, supra* note 6.

[21] *Id.* at 66.

[22] *Id.*

[23] See, Neb. Rev. Stat. §§ 60-6,108(1) (Reissue 2010) and 60-6,196; *State v. Prater*, 268 Neb. 655, 686 N.W.2d 896 (2004).

provides that such violations of the Nebraska Rules of the Road "shall apply upon highways and anywhere throughout the state except private property which is not open to public access." In contrast, all other provisions of the Nebraska Rules of the Road "refer exclusively to operation of vehicles upon highways except where a different place is specifically referred to in a given section."[24]

Though there is some overlap, many violations under the points system do not present the same immediate threat to the public as reckless driving, careless driving, and DUI. They are violations such as speeding,[25] failure to yield to a pedestrian,[26] or failure to render aid,[27] that can only occur on "public highways." And a violation under § 60-4,186 of driving with a license that has been revoked under the points system is punished less severely than driving with a revoked license under the categories listed in § 60-4,108. Under § 60-4,186, the defendant is subject to a Class III misdemeanor and 6 months' revocation, while under § 60-4,108(1)(a), a driver is subject to a Class II misdemeanor and a 1-year revocation. The Legislature plainly contemplated that drivers prosecuted under § 60-4,108 present a greater level of culpability and danger to the public than drivers falling under § 60-4,186. It is thus logical that driving with a revoked license under § 60-4,108 encompasses a broader range of locations than under § 60-4,186.

We do not decide in this case whether driving with a revoked license on private property which is not open to public access may violate § 60-4,108, because the facts of this case do not present that issue. The Wal-Mart parking lot was open to public access. It was a place where members of the public could be endangered by Frederick, who demonstrated

---

[24] § 60-6,108(1).

[25] § 60-4,182(10).

[26] § 60-4,182(11).

[27] § 60-4,182(3).

through his prior DUI conviction that he is unable to safely exercise the privilege conferred by his operator's license.

[8] Because § 60-4,108 is plainly written without the limitation of "public highways" found in other statutes, we do not read that limitation into the statute. We see no inherent inconsistency or absurd result from our failure to read "public highways" into § 60-4,108—at least as concerns "anywhere throughout the state except private property which is not open to public access."[28] Section 60-4,108 is consistent with other statutes that prohibit driving on private property when doing so endangers the public that has access to the private property. Therefore, we affirm Frederick's conviction for violating § 60-4,108(1).

Having affirmed the conviction, we observe that the county court committed plain error when it failed to revoke Frederick's operator's license for 1 year as required by § 60-4,108(1)(a). Section § 60-4,108(1)(a) states in relevant part that

> the court shall, as a part of the judgment of conviction, order such person not to operate any motor vehicle for any purpose for a period of one year from the date ordered by the court and also order the operator's license of such person to be revoked for a like period.

Inasmuch as this court has the power on direct appeal to remand a cause for the imposition of a lawful sentence where an erroneous one has been pronounced,[29] we vacate the sentence imposed and remand the cause for imposition of the sentence required by law.

## CONCLUSION

For the foregoing reasons, we affirm Frederick's conviction, vacate his sentence, and remand for resentencing.

Affirmed in part, and in part vacated
and remanded for resentencing.

---

[28] See § 60-6,108(1).

[29] *State v. Ferrell*, 218 Neb. 463, 356 N.W.2d 868 (1984).