STATE OF CONNECTICUT *v.* RYAN A. RAMEY
(AC 32585)

Bishop, Gruendel and Robinson, Js.

---

Argued January 19—officially released March 29, 2011

*Annacarina Jacob*, senior assistant public defender, with whom, on the brief, was *Kent Drager*, senior assistant public defender, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, former state's attorney, and *Terence D. Mariani*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Ryan A. Ramey, appeals from the judgment of conviction, rendered after a jury trial, of arson in the first degree in violation of General Statutes § 53a-111 (a) (1), arson in the first degree in violation of General Statutes § 53a-111 (a) (4) and interfering with an officer in violation of General Statutes § 53a-167a. On appeal, the defendant claims that the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that he (1) intentionally started the fire, (2) specifically intended to destroy or damage the building and (3) had reason to believe that the building was or may have been occupied or inhabited at the time the fire started. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. The defendant lived in a first floor apartment in Naugatuck from March, 2004, to October, 2006. All six apartments in the building had tenants at the time. In the late morning of October 13, 2006, the defendant telephoned Samantha Squires, his former fiancee and the mother

of his two children, and indicated a desire to commit suicide. In response, Squires called the police and asked them to check on him. When the police arrived at the apartment building, they saw that a window on the first floor had been punched out and broken glass was hanging from it. Rather than entering the building, the police decided to attempt to make telephone contact with the defendant. At 11:25 a.m., the police telephoned the defendant at a number provided by Squires. The defendant answered but immediately hung up once the police officer identified himself. At 11:31 a.m., the other first floor tenant, who was nervous because she had heard breaking noises coming from the defendant's apartment for several hours, left the premises in her car. The police continued to call the defendant's telephone number, but he would not converse with them.

A police officer reported seeing a person moving back and forth inside the defendant's apartment at 12:04 p.m. At 12:15 p.m., the defendant answered a telephone call from a police officer, threatened to jump out a window if the police called again, and then hung up. The officer telephoned again at 12:20 p.m., but the call went straight to voice mail, as did all subsequent calls. Another police officer reported seeing smoke inside the building at 12:22 p.m. At 12:25 p.m., he saw the defendant, who was coughing, climb onto the fire escape through a back window. After the officer asked him to come down, the defendant reentered the building and closed the blinds and one of the windows. The officer then reported at 12:31 p.m. that the fire had died down. At 12:38 p.m., however, he reported that the fire had regained force. Thereafter, the fire became progressively worse, melting the blinds and roaring. Rescue workers waited outside the building because they did not know the defendant's location and they feared for their own safety. At 1:37 p.m., the defendant fell from a third story window, at which time the police had to physically

restrain him while placing him under arrest. Firefighters immediately began to suppress the fire. While they were inside the house, however, part of the roof collapsed, forcing them to retreat. Ultimately, they were able to extinguish the fire only after the building sustained severe structural damage.

During his subsequent jury trial, at the end of the state's case, the defendant moved for a directed verdict on the ground that the state had adduced insufficient evidence to prove beyond a reasonable doubt that he started the fire, that he specifically intended to damage the building and that he had reason to believe that the building may have been occupied. The court denied the motion. Following the trial, the defendant was convicted of arson in the first degree in violation of § 53a-111 (a) (1), arson in the first degree in violation of § 53a-111 (a) (4) and interfering with an officer in violation of § 53a-167a. The defendant then moved for a judgment of acquittal on the ground that the evidence failed to establish that he acted with the specific intent to destroy or damage the building. The court denied this motion. At sentencing, the court imposed a total effective sentence of twelve years incarceration with eight to serve and three years of probation. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we set forth the principles that govern our review of the defendant's claims. "[W]e have consistently employed a two-part analysis in appellate review of the sufficiency of the evidence to sustain a criminal conviction. . . . First, we construe the evidence in the light most favorable to sustaining the verdict." (Internal quotation marks omitted.) *State* v. *Taylor*, 126 Conn. App. 52, 57, 10 A.3d 1062 (2011). In other words, "we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports

the [jury's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *McGee*, 124 Conn. App. 261, 272, 4 A.3d 837, cert. denied, 299 Conn. 911, 10 A.3d 529 (2010).

In the second part of this analysis, "we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . That the evidence is circumstantial rather than direct does not diminish the probative force of that evidence. . . . We must be mindful, however, that [a]lthough the jury may draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture." (Internal quotation marks omitted.) *State* v. *Taylor*, supra, 126 Conn. App. 57.

Section 53a-111 (a) provides in relevant part: "A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied . . . or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury." The defendant claims that there was insufficient evidence to prove beyond a reasonable doubt that he (1) intentionally started the fire, (2) specifically intended to destroy or damage the building and (3) had reason to believe that the building was or may have been occupied or inhabited at the time the fire started. We disagree.

The defendant notes that there was a lack of direct evidence that he intentionally started the fire. Our decisional law makes clear, however, that intent may be inferred even in the absence of direct evidence. "The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's

state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as . . . the events leading up to and immediately following the incident." (Internal quotation marks omitted.) *State* v. *McGee*, supra, 124 Conn. App. 273. The underlying facts of the case at hand fit squarely into our law as it relates to permissible inferences.

In regard to the origin of the fire, the fire marshal testified that he found no accidental cause of the fire, having discovered no ignition sources such as candles, appliances, accelerants or electrical system failures. Because no accelerants were detected at the scene and the marshal did not definitively conclude that the fire was intentional, the defendant contends that the jury could not have inferred reasonably that the fire was intentional. We note, however, that the marshal also testified that a person can light a fire without accelerants. Moreover, definitive expert testimony that a fire was started intentionally is not required for a conviction under § 53a-111. See, e.g., *State* v. *Ancona*, 256 Conn. 214, 222–23, 772 A.2d 571 (2001) (circumstantial evidence sufficient to prove fire started intentionally despite expert testimony that cause " 'inconclusive' "). The lack of evidence of accidental causes, therefore, may contribute to a reasonable inference that the fire was started intentionally, particularly when supported by the cumulative force of other circumstantial evidence bearing on intent.

Here, there was an abundance of additional circumstantial evidence to support the jury's findings. The marshal testified that the fire began in the defendant's front room. That is where the police observed someone pacing during the time in question. The jury logically could have inferred that the person observed by the police was the defendant, based on evidence that he was the only person seen leaving the building after the fire started. From this evidence, the jury reasonably

could have inferred that no one other than the defendant had the opportunity to start the fire. See *State* v. *Famiglietti*, 219 Conn. 605, 614, 595 A.2d 306 (1991).

Additionally, the defendant's behavior raised the reasonable inference of his destructive emotional instability. The downstairs neighbor heard the noises of banging, hammering and dragging of furniture from 1 a.m. until she left for work at 4 a.m. Other neighbors also heard banging or breaking noises between 4 a.m. and 5 a.m. on the morning of the fire, noises that continued throughout the morning hours. As noted, the defendant also called Squires to express his desire to commit suicide and to say "goodbye" to her. Once the fire had begun, he sought no emergency assistance and, in fact, resisted persistent efforts by the police to reach him by telephone. Instead, after stepping onto the fire escape and seeing a police officer, he reentered the building and pulled down the blinds, thus preventing the police from seeing into the front room. Although, on appeal, the defendant now suggests other explanations for his behavior that are consistent with innocence, for example, that the fire could have been lit by a stray cigarette while he was anxiously pacing, "[w]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." (Internal quotation marks omitted.) *State* v. *Kowalyshyn*, 118 Conn. App. 711, 724, 985 A.2d 370, cert. denied, 295 Conn. 903, 989 A.2d 602 (2010). Based on this record, we conclude that there was sufficient evidence to support the jury's verdict that the defendant intentionally started the fire.

The defendant next claims that, even assuming that he started the fire with a suicidal purpose, his conduct indicated recklessness or indifference to the damage it would cause, not specific intent to damage or destroy

the building. The state, however, adduced ample circumstantial evidence from which the jury reasonably could have inferred that the defendant possessed the requisite intent to damage the building at the time that he started the fire.[1] Even if suicide was his primary goal, the jury reasonably could have inferred that he intended to damage the building as a means to that goal, particularly in light of the evidence that the fire started on the floor of his front room and that he did not seek emergency assistance to extinguish it. Consequently, his claim in this regard is unavailing.

The defendant's final claim is that he had no reason to believe that the building may have been occupied at the time he started the fire.[2] It is undisputed that the defendant was the only person in the building when he started the fire; however, the evidence that this was a multiresident apartment building, together with evidence that there was some likelihood at the time that another tenant may have actually been there, provides a sufficient basis for the jury's determination that the defendant had reason to believe that the building may have been occupied at the time. One first floor resident, who left the building shortly before the fire started, testified that she usually stayed home during the day. Additionally, the car of another resident, who normally drove to work but had been picked up by a coworker

---

[1] "In determining the sufficiency of the evidence in arson cases, we look to the time that the defendant started the fire to ascertain whether the elements of § 53a-111 (a) (1) were met." *State* v. *Finley*, 34 Conn. App. 823, 826, 644 A.2d 371, cert. denied, 231 Conn. 927, 648 A.2d 880 (1994).

[2] The defendant's brief asserts that the language of § 53a-111 (a) (1), which requires the state to prove whether "the person ha[d] reason to believe the building may be inhabited or occupied," is a subjective standard. We do not agree. Rather, we believe that the state must prove what the defendant objectively had reason to believe under the circumstances, regardless of whether he subjectively held that belief. See, e.g., *State* v. *Fausel*, 295 Conn. 785, 795, 993 A.2d 455 (2010) ("reason to believe" is an objective and not a subjective test). The characterization of the phrase "reason to believe" in *Fausel* is equally applicable to the context at hand.

that day, was parked in the building's lot at the time the fire started. Both of these residents testified that they were friendly with the defendant, who had lived in the apartment for over two and one-half years. On the basis of this testimony, the jury reasonably could have inferred that the defendant had reason to believe that one or more tenants may have been in the building during the incident.

After a thorough review of the evidence adduced at trial and the reasonable inferences it permitted, we conclude that there was sufficient evidence to support the defendant's conviction.

The judgment is affirmed.

In this opinion the other judges concurred.