******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RYAN RAMEY *v.* COMMISSIONER OF CORRECTION
(AC 34367)

Alvord, Keller and Pellegrino, Js.

*Argued February 18—officially released May 13, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*Michael D. Day*, for the appellant (petitioner).

*Melissa L. Streeto*, senior assistant state's attorney,
with whom, on the brief, were *Maureen Platt*, state's
attorney, and *Eva B. Lenczewski*, senior assistant
state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Ryan Ramey, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims that the court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly concluded that he was not deprived of the effective assistance of trial counsel. Specifically, the petitioner claims that his counsel rendered ineffective assistance by failing to raise the issue of intoxication to negate an element of the crime of which he was convicted at the underlying criminal trial. We dismiss the petitioner's appeal.

The relevant facts and procedural history are set forth in this court's decision disposing of the petitioner's direct appeal. "The [petitioner] lived in a first floor apartment in Naugatuck from March, 2004, to October, 2006. All six apartments in the building had tenants at the time. In the late morning of October 13, 2006, the [petitioner] telephoned Samantha Squires, his former fiancee and the mother of his two children, and indicated a desire to commit suicide. In response, Squires called the police and asked them to check on him. When the police arrived at the apartment building, they saw that a window on the first floor had been punched out and broken glass was hanging from it. Rather than entering the building, the police decided to attempt to make telephone contact with the [petitioner]. At 11:25 a.m., the police telephoned the [petitioner] at a number provided by Squires. The [petitioner] answered but immediately hung up once the police officer identified himself. At 11:31 a.m., the other first floor tenant, who was nervous because she had heard breaking noises coming from the [petitioner's] apartment for several hours, left the premises in her car. The police continued to call the [petitioner's] telephone number, but he would not converse with them.

"A police officer reported seeing a person moving back and forth inside the [petitioner's] apartment at 12:04 p.m. At 12:15 p.m., the [petitioner] answered a telephone call from a police officer, threatened to jump out a window if the police called again, and then hung up. The officer telephoned again at 12:20 p.m., but the call went straight to voice mail, as did all subsequent calls. Another police officer reported seeing smoke inside the building at 12:22 p.m. At 12:25 p.m., he saw the [petitioner], who was coughing, climb onto the fire escape through a back window. After the officer asked him to come down, the [petitioner] reentered the building and closed the blinds and one of the windows. The officer then reported at 12:31 p.m. that the fire had died down. At 12:38 p.m., however, he reported that the fire had regained force. Thereafter, the fire became progressively worse, melting the blinds and roaring.

Rescue workers waited outside the building because they did not know the [petitioner's] location and they feared for their own safety. At 1:37 p.m., the [petitioner] fell from a third story window, at which time the police had to physically restrain him while placing him under arrest. Firefighters immediately began to suppress the fire. While they were inside the house, however, part of the roof collapsed, forcing them to retreat. Ultimately, they were able to extinguish the fire only after the building sustained severe structural damage." *State* v. *Ramey*, 127 Conn. App. 560, 562–64, 14 A.3d 474, cert. denied, 301 Conn. 910, 19 A.3d 177 (2011).

The petitioner was convicted, after a jury trial, of the crimes of arson in the first degree in violation of General Statutes § 53a-111 (a) (1), arson in the first degree in violation of § 53a-111 (a) (4) and interfering with an officer in violation of General Statutes § 53a-167a.[1] The trial court imposed a total effective sentence of twelve years incarceration with eight years to serve and three years of probation. Id., 564.

On January 25, 2012, the petitioner filed an amended petition for a writ of habeas corpus alleging that his trial counsel, Attorney H. Jeffrey Beck, provided ineffective assistance because he "failed to present evidence supporting his intoxication at the time of the alleged offense or to raise a defense of intoxication to the arson charges." At the habeas trial, the court heard testimony from Beck and the petitioner. The trial exhibits included the state's charging information, transcripts of the criminal proceedings and the petitioner's medical record that indicated he had a blood alcohol level of 0.274 on the day of the fire. At the conclusion of the habeas trial on February 2, 2012, the court denied the petition in an oral decision.

The court first noted that Beck was "very experienced," "supremely educated" and "competent and skilled in what he does."[2] On the basis of Beck's testimony, the court found that Beck had considered raising the issue of the petitioner's intoxication and had discussed that potential strategy with him. Ultimately, Beck concluded that it would be a better defense strategy to attack the weaknesses in the state's case. The habeas court determined that Beck's performance was not deficient. It also concluded that the petitioner failed to prove that he had been prejudiced in any way by the failure to raise at the criminal trial the issue of his level of intoxication. The court subsequently denied the petition for certification to appeal from the judgment denying the habeas petition. This appeal followed.

We first consider the petitioner's claim that the habeas court improperly denied his petition for certification to appeal. The standard of review is well settled. "We examine the petitioner's underlying claim . . . to determine whether the habeas court abused its discretion in denying the petition for certification to appeal.

. . . In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." (Internal quotation marks omitted.) *McClam* v. *Commissioner of Correction*, 98 Conn. App. 432, 435–36, 909 A.2d 72 (2006), cert. denied, 281 Conn. 907, 916 A.2d 49 (2007). "A reviewing court need not address both components of the inquiry if the [petitioner] makes an insufficient showing on one." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 89 Conn. App. 134, 139, 871 A.2d 1103, cert. denied, 275 Conn. 909, 882 A.2d 676 (2005).

The petitioner claims that trial counsel rendered ineffective assistance because "he failed to raise an intoxication defense" at the underlying criminal trial. Intoxication is not a defense to a criminal charge, but it may be offered by a defendant to negate an element of the crime charged.[3] The petitioner argues that because his blood alcohol level on the day of the incident was 0.274, defense counsel should have advanced the theory "that even assuming, arguendo, that the petitioner did start the fire, the petitioner was unable to formulate the specific intent required for the commission of the crime of arson in the first degree."

At the habeas trial, Beck testified that he believed the state would not be able to prove beyond a reasonable doubt that the petitioner intended to damage or destroy a dwelling or building or that he intended to start a fire, as required for a conviction of arson in the first degree.[4] He based this opinion on the fact that the fire marshal did not know and could not testify as to how the fire originated. Although the fire marshal believed it had started in the living room area of the petitioner's apartment because of the burn pattern, the cause of the fire remained undetermined. Further, there was no evidence of any accelerant being used to start the fire. Because the state had no physical evidence of the fire being set intentionally, Beck determined that the best trial strategy would be to undermine the state's case by focusing on its weaknesses.

Beck further testified that he had considered raising the issue of the petitioner's level of intoxication on the day of the fire and had discussed that potential strategy with the petitioner. He believed, however, that the best strategy was to attack the weaknesses in the state's case because the failure to prove the petitioner's intent to destroy or damage the apartment building by starting a fire would result in his acquittal. Beck believed that focusing on the petitioner's voluntary intoxication "might not play well with the jury." The petitioner told Beck that he had little or no recollection of what happened when the fire started, and Beck believed it would not be helpful to raise the issue of intoxication because "it kind of looks like an excuse to criminal conduct . . . ." Furthermore, he knew that the state intended to present evidence at trial that supported its claim that the petitioner was quite aware of his actions, which made it unlikely that intoxication could have been used successfully to show that the petitioner was incapable of forming the requisite criminal intent for arson in the first degree. During the habeas trial, Beck confirmed that there had been several telephone conversations between the petitioner and the police officers during the relevant time period at the apartment and that the petitioner had been able to travel from his first floor apartment up to the third floor through a fire engulfed building in order to jump to safety.[5] For those reasons, Beck believed it was not a good trial tactic to rely on the petitioner's intoxication, and he "felt strongly about the strategy" that he had chosen.

The only other witness at the habeas trial was the petitioner, who testified that he told Beck that he had been drinking heavily from the night before the fire into the early morning hours.[6] He also testified that he recalled the sun coming up, but that he "really didn't remember much after that until waking up to a fire. . . . I couldn't really see much after that, I couldn't see at all. You know, I didn't remember anything, really, after that until I woke up from a coma."

On the basis of this record, we conclude that the habeas court correctly determined that the petitioner failed to demonstrate that Beck's performance was deficient when he failed to raise the issue of the petitioner's level of intoxication to the jury. Beck expressly stated that he believed that the best trial strategy was to attack the weaknesses in the state's case because the lack of forensic evidence would preclude the state from proving beyond a reasonable doubt that the petitioner had set the fire intentionally. He testified that he had considered but rejected the idea of presenting an intoxication defense at the criminal trial for strategic reasons.

As the habeas court properly found, the petitioner's claim that Beck should have raised the issue of intoxication is not persuasive because it is directed at Beck's trial strategy. "[S]trategic choices made after thorough

investigation of [the] law and facts relevant to plausible options are virtually unchallengeable . . . ." (Internal quotation marks omitted.) *Crocker* v. *Commissioner of Correction*, 126 Conn. App. 110, 131, 10 A.3d 1079, cert. denied, 300 Conn. 919, 14 A.3d 333 (2011). "[J]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . .

"[T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . . It is well established that [a] reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance and that a tactic that appears ineffective in hindsight may have been sound trial strategy at the time." (Internal quotation marks omitted.) *Coward* v. *Commissioner of Correction*, 143 Conn. App. 789, 800–801, 70 A.3d 1152, cert. denied, 310 Conn. 905, 75 A.3d 32 (2013). Beck's decision not to call attention to the petitioner's intoxication "falls into the category of trial strategy or judgment calls that we consistently have declined to second guess." (Internal quotation marks omitted.) *Crocker* v. *Commissioner of Correction*, supra, 126 Conn. App. 132. Because the habeas court credited Beck's testimony that the decision not to argue intoxication was a matter of trial strategy, the petitioner failed to demonstrate that counsel's actions were unreasonable under the circumstances of this case.

Furthermore, we agree with the habeas court that even if such a strategy constituted ineffective assistance, the petitioner did not prove that he had been prejudiced by the failure to raise the issue of his intoxication. As noted by the habeas court, the petitioner relied solely on his blood alcohol level on the day of the fire to support his argument that he was incapable of forming the requisite intent to damage or destroy a building by starting a fire. No evidence was presented to the habeas court that indicated the petitioner's blood alcohol level at the time the fire was set. Further, no toxicologist testified as to whether the petitioner's level of intoxication caused a "substantial disturbance of mental or physical capacities"; General Statutes § 53a-7; that rendered him unable to form the specific intent required to commit arson in the first degree.[7] Such an opinion, of course, would take into consideration such

factors as the petitioner's height and weight. Without evidence of this nature, the petitioner failed to prove that he was prejudiced by any alleged deficiency in Beck's performance.[8]

Upon our examination of the record and briefs, as well as the court's resolution of the issues presented in the habeas petition, we are not persuaded that the court abused its discretion in denying the petition for certification to appeal. The petitioner has not demonstrated that the issues presented are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions are adequate to deserve encouragement to proceed further. See *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991); *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994).

The appeal is dismissed.

In this opinion KELLER, J., concurred.

[1] Initially, the petitioner also was charged with two counts of cruelty to animals in violation of General Statutes § 53-247 (a). The third floor tenants had two dogs, a five year old yellow Labrador retriever named Chelsea and a two year old chocolate Labrador retriever named Guinness, that perished in the fire. At the close of the state's case, the petitioner made an oral motion for a judgment of acquittal as to all charges. The court granted the motion with respect to the cruelty to animals charges for the stated reason that there was no direct evidence that the petitioner knew that the dogs were in the third floor apartment on the day of the fire.

[2] The evidence demonstrated that Beck had participated in sixty to seventy criminal trials, including cases involving serious felony charges, by the time he represented the petitioner.

[3] General Statutes § 53a-7 provides in relevant part: "Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged . . . . As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

[4] General Statutes § 53a-111 (a) provides in relevant part: "A person is guilty of arson in the first degree when, with intent to destroy or damage a building . . . he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied . . . or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury."

[5] In the transcripts of the criminal proceedings that were submitted as exhibits during the habeas trial, there also was testimony that (1) one of the tenants heard breaking noises coming from the petitioner's apartment from 5 a.m. until she left the building at 11 a.m., (2) when a police officer contacted the petitioner at noon, the petitioner said, "I don't want your help," (3) when a police officer contacted the petitioner at 12:15 p.m., the petitioner told him that he would jump from the window if the police called again, (4) an officer noticed smoke coming from the building at 12:22 p.m., (5) the fire originated in a pile of Squires' clothing and other personal items, which she said she had seen strewn about the petitioner's apartment a few days before the fire, (6) when the petitioner arrived at the third floor and climbed onto the fire escape at 12:25 p.m. and the officer asked him to come down, the petitioner reentered the smoky building and closed the blinds and one of the windows, (7) the fire became more intense after the petitioner reentered the building, (8) when the petitioner jumped or fell from the third story window at 1:37 p.m., he started to get up as if he intended to run from the scene, and (9) when the petitioner spoke with Squires after the fire, he told her that he remembered setting free his and Squires' cat and bird before the fire. Accordingly, even though the petitioner testified at the habeas hearing that he woke up after the fire started and

was in "a coma" until that time, Beck reasonably could have determined that the evidence would preclude a viable argument that the petitioner was so intoxicated that he was incapable of forming the intent to damage or destroy the building by setting a fire.

[6] The dissent, relying on a statement in the presentencing memorandum of law from the petitioner's criminal trial, states that the petitioner "had been drinking for more than eighteen hours, consuming a liter of tequila in that time." At the habeas trial, however, the petitioner testified that he "bought a bottle of tequila" and that he "and a few of my friends came back to the house, stayed there drinking until . . . the sun was coming up, and that's when they left." It appears, if the petitioner's testimony is credited, that a number of people were drinking from the bottle of tequila.

[7] The dissent cites *State* v. *Rodriguez*, 44 Conn. App. 818, 822, 692 A.2d 846, cert. denied, 242 Conn. 902, 697 A.2d 363 (1997), for the proposition that "it is not necessary for a *defendant* to present evidence of the effect of an intoxicating substance on him to require an instruction on intoxication and specific intent." (Emphasis added.) Significantly, this case is a direct appeal from a criminal case in which the defendant requested jury instructions on intoxication. The present case is a habeas case, which *requires the petitioner to prove both* deficient performance of counsel and prejudice to the defense because of the deficient performance. Here, the petitioner failed to meet the prejudice prong of *Strickland* because he failed to present evidence that his level of intoxication caused a "substantial disturbance of mental or physical capacities . . . ." General Statutes § 53a-7.

[8] On January 26, 2012, which was less than one week before the scheduled habeas trial date, the petitioner filed a motion for a four month continuance of the trial in order to retain a toxicology expert to review the petitioner's medical records and offer an opinion as to the effect of his intoxication on his ability to form the requisite intent. The court, *Solomon*, *J.*, denied his motion, and the petitioner has not challenged that ruling on appeal.