******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PELLEGRINO, J., dissenting. I respectfully dissent. I do not agree that the petitioner's trial attorney's "strategy" to avoid proving and arguing that the petitioner, Ryan Ramey, was intoxicated would in any way have detracted from his primary thrust that the state's own witness could not opine how the fire started and, as a result, the petitioner had a good chance at acquittal. It is logical and certainly consistent with the evidence to argue that the state could not prove its case that the petitioner started the fire and that, even if the jury found beyond a reasonable doubt that he did start the fire, he certainly could not be guilty of first degree arson because he was intoxicated and did not have the specific intent to commit the crime. These are not inconsistent arguments, and the fact that they were not made deprived the jury of the opportunity to consider a lesser included crime and, ultimately, deprived the petitioner of the chance that he could have faced a lesser penalty. The petitioner's trial attorney, Attorney H. Jeffrey Beck, should not be allowed to hide behind the "trial strategy" shield to override what I believe to be ineffective representation. Accordingly, I conclude that the habeas court abused its discretion in denying certification to appeal, and I would reverse the judgment denying the petition for a writ of habeas corpus.

I

Appellate review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time [of trial]." (Internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 512, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009). Due to the amount of circumstantial evidence adduced at trial, the jury only could have drawn one reasonable conclusion—the petitioner started the fire in question. The record reflects that the petitioner was the only person in the building at the time the fire started. The fire marshal, Charles R. Doback, Jr., testified on the basis of his report that it was "very obvious" that the fire started in the room in the petitioner's apartment where the responding officers observed the petitioner. Although Doback did testify that he could not determine exactly how the fire started, he was able to rule out several potential accidental causes. On cross-examination, Beck never raised the possibility that there may have been other potential accidental causes of the fire that Doback had not ruled out. Doback's testimony as a whole left the impression that the fire was not accidental. Furthermore, even though Doback testified

that there was no evidence that accelerants were used to start the fire, he made it clear that the fire could have been set intentionally without using an accelerant. In sum, the state's evidence was that the petitioner was the only occupant of the building at the time that the fire was set, and the state's fire investigator ruled out any accidental causes that he considered.[1]

As a matter of common sense, the only reasonable conclusion based on these facts was that the petitioner intentionally started the fire. See *State* v. *Rodgers*, 198 Conn. 53, 59, 502 A.2d 360 (1985) ("jury must rely on its common sense, experience and knowledge of human nature"). The only possible alternative explanation for the fire was that, by pure coincidence, a fire started in the petitioner's apartment on the same day that he threatened suicide, barricaded himself inside the building, and was surrounded by police. This theory defies common sense. Absent evidence to the contrary, the state's evidence led to the conclusion that the petitioner intended to set the fire, which in turn invites a strong inference that the petitioner intended to damage the building. See *State* v. *Coleman*, 304 Conn. 161, 167–68, 37 A.3d 713 (2012) (specific intent to commit murder inferred from defendant's conduct and weapon used); *State* v. *Ayala*, 133 Conn. App. 514, 519–20, 36 A.3d 274 (specific intent to prevent individual's liberation inferred from threatening victim's life and ordering her to sit on couch), cert. denied, 304 Conn. 913, 40 A.3d 318 (2012). As this court stated previously in the petitioner's direct appeal, the state provided "ample circumstantial evidence from which the jury reasonably could have inferred that the [petitioner] possessed the requisite intent to damage the building at the time that he started the fire." *State* v. *Ramey*, 127 Conn. App. 560, 568, 14 A.3d 474, cert. denied, 301 Conn. 910, 19 A.3d 177 (2011).

The only reasonable strategy in light of the state's evidence was not to claim that the evidence was insufficient, but to argue that, although the fire intentionally was set, the petitioner recklessly caused damage to the building as opposed to specifically intending to do so. The petitioner's intent at the time the fire started was central to the outcome of the case. Beck's performance was deficient because he failed to respond to the state's circumstantial case with the credible evidence available to him that demonstrated the petitioner did not specifically intend to damage the building.

The most persuasive evidence that the petitioner did not specifically intend to damage the building was that he was intoxicated at the time the fire started. See General Statutes § 53a-7 (evidence of intoxication can negate evidence of specific intent). At the habeas trial, the petitioner testified that he began drinking at 5 p.m. on the evening before the fire, and continued to drink with friends until dawn.[2] The hospital report indicated that the petitioner's blood alcohol level was 0.274 when

he arrived at the emergency room.[3] This report is credible, scientific evidence that the petitioner may not have intended to damage the building because he was intoxicated at the time the fire started.

The argument that the petitioner did not intend to damage the building also was supported by evidence that he was upset about his fiancée moving out and taking their children with her. The petitioner's fiancée testified that when she last visited him the apartment was in disarray. She testified that the petitioner had piled her personal items in the room where the fire started. The evidence at trial tended to show that this was the origin of the fire. The fiancée testified that when the petitioner called on the morning of the fire, "[h]e just wasn't acting normal . . . ." I submit that this evidence, together with the evidence that he was impaired by alcohol, raises reasonable doubt as to whether the petitioner purposefully set out to damage the building, but, instead, recklessly lit fire to his fiancée's personal possessions. The petitioner's intent was the key issue at trial, and, even though there was credible evidence available, Beck failed to advance the plausible argument that the petitioner recklessly started the fire and did not specifically intend to damage the building.[4]

Our Supreme Court previously found that defense counsel's "failure to present [a] relevant, plausible third party culpability defense constituted deficient performance . . . ." *Bryant* v. *Commissioner of Correction*, supra, 290 Conn. 517–18. The court reasoned that the credible third party culpability evidence "would have called into question the most basic elements of the state's case . . . . In light of all the circumstances . . . the decision not to present the third party culpability defense fell below an objective standard of reasonableness, and, therefore, constituted deficient performance under the principles enunciated in *Strickland*." Id., 520. In the present case, I would conclude that Beck's failure to present evidence of intoxication was objectively unreasonable. In light of all the circumstances, including the ample amount of circumstantial evidence presented by the state and the availability of a credible defense, it was objectively unreasonable to refrain from presenting that defense.

Beck reasoned that his decision was strategic because evidence of intoxication would not "play well" with the jury in that it "looks like an excuse to criminal conduct" and he did not want to confuse the jury with multiple strategies. To begin, Beck's strategy to highlight the state's inability to prove conclusively how the fire started and the evidence that the petitioner was intoxicated are not inconsistent or difficult to understand. Both reinforce the argument that the petitioner did not specifically intend to damage the building. I hesitate to accept the bare assertion that the intoxica-

tion evidence would not "play well" with the jury.[5] I acknowledge the presumption that an attorney's strategic decision is sound, but I am mindful that "[t]he United States Supreme Court has cautioned that [t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable." (Internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, 107 Conn. App. 181, 186, 944 A.2d 429 (2008). Although an attorney's strategic decision usually "falls into the realm of trial strategy, which is typically left to the discretion of trial counsel . . . it does not follow necessarily that, in every instance, trial counsel's strategy concerning these decisions is sound."[6] (Citation omitted.) *Bryant* v. *Commissioner of Correction*, supra, 290 Conn. 521. In light of the foregoing, Beck's failure to present the intoxication evidence was not objectively reasonable.

## II

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . [T]he petitioner [must also] demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different." (Citations omitted; internal quotation marks omitted.) Id., 522. I would conclude that Beck's deficient performance prejudiced the petitioner at trial.

As previously stated, the petitioner's intent was the dispositive issue. As a result, Beck's failure to argue that the petitioner's intoxication affected his ability to form the specific intent to damage the building "had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture . . . ." *Strickland* v. *Washington*, 466 U.S. 668, 695–96, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The jury was presented only with the state's evidence and it was left to draw the obvious inference that the petitioner intentionally started the fire, and thereby intended to damage the building. Beck's failure to present credible, scientific evidence of intoxication to call this inference into question "was exceedingly damaging to the petitioner's defense." *Bryant* v. *Commissioner of Correction*, supra, 290 Conn. 525.

The majority reasons that the petitioner has not proven that he suffered prejudice because he did not present evidence of his blood alcohol level at the precise time of the fire and, moreover, there was no expert testimony that his level of intoxication rose to a "substantial disturbance of mental or physical capacities . . . ." The evidence indicates that the petitioner was intoxicated at the time the fire started. See footnote 3 of this dissenting opinion. Furthermore, this court previously has concluded that, with respect to evidence of intoxication presented pursuant to § 53a-7, "it is not necessary for a defendant to present evidence of the

effect of an intoxicating substance on him to require an instruction on intoxication and specific intent. The jury is permitted to infer from the fact that an intoxicating substance was ingested that an incapacity to form a specific intent resulted. . . . This does not mean, however, that only the slightest evidence of the possibility of intoxication is sufficient to require a court to give a requested charge on intoxication and specific intent." (Citation omitted.) *State* v. *Rodriguez*, 44 Conn. App. 818, 822, 692 A.2d 846, cert. denied, 242 Conn. 902, 697 A.2d 363 (1997).

The petitioner has presented more than the slightest evidence that he was intoxicated; he submitted the results of his blood alcohol test at the hospital. See id., 821, 822–23 (defendant's statement to police that he had used drugs prior to crime, possession of a packet of white powder, and documentation he belonged to needle exchange program insufficient for intoxication instruction); see also *State* v. *Morales*, 71 Conn. App. 790, 816, 804 A.2d 902 (defendant's statement he consumed alcohol insufficient), cert. denied, 262 Conn. 902, 810 A.2d 270 (2002). Had Beck offered evidence of intoxication, the petitioner would have been entitled to an instruction on intoxication and specific intent, which then "permit[s] [the jury] to infer from the fact that an intoxicating substance was ingested that an incapacity to form the specific intent resulted." *State* v. *Rodriquez*, supra, 44 Conn. App. 822. The jury is permitted to draw this conclusion in the absence of expert testimony and, therefore, I disagree with the majority that expert testimony was required to demonstrate prejudice here. See *Strickland* v. *Washington*, supra, 466 U.S. 694–95 (petitioner must show trial court proceeding would have been different presuming jury acted according to law).

The outcome of the prejudice inquiry, therefore, depended on whether it was reasonably probable that the jury would have drawn the inference that the petitioner's mental capacity was substantially disturbed had Beck presented the credible intoxication evidence. See id., 694, 696. "Reasonable probability does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome in the case . . . ." (Internal quotation marks omitted.) *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 722, 789 A.2d 1046 (2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* v. *Washington*, supra, 466 U.S. 694.

At the time of the fire, the petitioner had been drinking for more than eighteen hours, consuming a liter of tequila in that time. He drank to the point where he could not remember the events surrounding the fire, and he had a 0.274 blood alcohol level when he finally reached the hospital. This evidence, and the evidence that the origin of the fire was a pile of the petitioner's

fiancée's clothes, undermines my confidence in a conviction of arson in the first degree, which requires that the petitioner had the specific intent to damage the building. It is reasonably probable that, but for Beck's failure to present the intoxication evidence, the jury would have inferred that the petitioner's intoxication caused a substantial disturbance in his mental capacity.

"[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. . . . The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Citation omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 689, 51 A.3d 948 (2012). Beck's failure to present evidence of intoxication undermined the adversarial process and my confidence in the petitioner's conviction of arson in the first degree. In my view, the court abused its discretion in denying the petition for certification to appeal. Furthermore, I would conclude that the petitioner was denied the effective assistance of counsel and, therefore, that the habeas court should have granted the petition for a writ of habeas corpus.

For the foregoing reasons, I respectfully dissent.

[1] Although Beck stated that his strategy was to attack the weaknesses in the state's case, his cross-examination of Doback—whose report, according to Beck, was the key to creating reasonable doubt with respect to the petitioner's intent—consisted of eight questions. One question pertained to the cause of the fire and established that the precise cause was undetermined.

[2] The habeas court credited the petitioner's testimony that he was in "a coma" when the fire started, and interpreted this testimony as establishing that the petitioner could not remember anything about how the fire started.

[3] The evidence tended to show that the fire started at approximately 12:22 p.m. when the officers first observed smoke inside the building. The petitioner's blood alcohol was measured at the hospital approximately two hours later at 2:24 p.m. The majority suggests that the hospital record is not evidence of what the petitioner's blood alcohol level was at the time the fire started. The implication made by the majority is that the petitioner, after consuming alcohol from 5 p.m. the previous evening until dawn, stopped drinking long enough to become sober by approximately 12:22 p.m., and then started then fire. Subsequently, the majority implies, he then began consuming alcohol again bringing his blood alcohol level up to 0.274 before falling out of the third story window. In my opinion, on the basis of the evidence, the reasonable inference is that the petitioner began drinking the previous evening then continued drinking throughout the day of the fire, and, therefore, the hospital report is a fair approximation of his level of intoxication at the time the fire started.

[4] This theory also is supported by the fact that there was no evidence that the petitioner had problems with any other residents in the building.

[5] Although Beck testified that intoxication evidence would not "play well" with the jury, he also stated that he could not recall ever advancing that argument during his career.

[6] In support of its conclusion that Beck's strategy was reasonable, the majority argues that the state had presented evidence which made it unlikely that the petitioner did not specifically intend to damage the building as a result of his intoxication because he was capable of forming the requisite intent. See footnote 5 of the majority opinion and associated text. I submit that this same evidence also tended to show that the petitioner was intoxicated and as a result was acting irrationally: after consuming alcohol all night he was heard causing damage in his own apartment, he threatened

suicide, set his pets free, reentered a burning building, and refused assistance after falling from a third story window. Moreover, the petitioner's testimony, which the habeas court credited, that he was unable to remember the events of that day is additional evidence that he was intoxicated at the time of the fire. See *Sanders* v. *Officers Club of Connecticut, Inc.*, 196 Conn. 341, 351, 493 A.2d 184 (1985).

I also note that § 53a-7 defines intoxication as a substantial disturbance in either the petitioner's mental or physical capacity. The fact that the petitioner was able to navigate to the third floor of the building, climb out on the fire escape, reenter a burning building, fall out a window, and subsequently attempt to flee, does not preclude a jury from finding that there was a substantial impairment in the petitioner's mental—as opposed to physical—capacity.